SWARTS RICHARDSON AND HARRIET A. RICHARDSON v. SCHOOL DISTRICT No. 10 IN WESTMINSTER.

*School.      Contract.      Teacher.      School District.*

The contract between the teacher and the school district contained a stipulation " that she should leave if the school was not satisfactory." *Held*, that the committee was not warranted under this stipulation in dismissing her on account of *her personal unpopularity* in the district, or for any reason other than dissatisfaction with *her school*.

A vote of the district to accept a proposal made by the teacher after her dismissal

to settle for a sum named, but which was not communicated to her, would not make the proposal binding on the teacher.

The committee left an order for her on the district treasurer for $7.50, at the teacher's boarding house in her absence, expressed to be for her services as teacher, which she took away to her brother's and kept it for three or four hours and then returned it to P., with whom she had boarded, and told him she should not accept it. *Held,* that her right to recover for the whole term was not thereby prejudiced.

THIS is an action brought by Harriet A. Kimball, while sole; but after the entry of the case in court she married Swarts Richardson, who appeared, and the action was prosecuted by them jointly. The case was referred and the referee found as follows: From March, 1862, to March, 1863, Charles C. Peck was the sole prudential committee of school district No. 10, in Westminster. In November, 1862, as such committee, he made a contract with the plaintiff, Harriet, that she should teach the district school in said district, to commence on the 8th day of December then next, for twelve weeks, and that the district should pay her therefor $2.50 per week and board her. And it was further stipulated that she should leave if the school was not satisfactory. She began the school accordingly on Monday morning, December 8th, 1862, and kept it till Saturday evening, December 27th, three weeks, when she was discharged by the committee and prevented from continuing it. She was a moderately good teacher, fairly competent to teach, and did teach reasonably well; she was not incompetent nor unfaithful. Dissatisfaction existed in the district; this arose in the first place, and chiefly, from her change of her boarding place, by which a family of influence in the district was affronted. She was thereupon subjected to sharp criticism as a teacher. She was not faultless; she committed some errors. These errors were not in themselves of a kind or magnitude to impair in any substantial degree her usefulness as a teacher, but those who felt ill disposed towards her from causes entirely apart from her qualifications as a teacher, took advantage of the opportunity to talk about her errors, and depreciate her competency as a teacher until a public opinion in the district was manufactured that she was incompetent, and the attendance of scholars at school very sensibly diminished. So that while it is true on the one hand that she was competent and faithful as a teacher, and no dissatisfac-

tion would have arisen had she been acceptable to the district in all respects apart from her qualifications as a teacher, yet on the other hand it is true that had she been faultless as a teacher, those unfriendly to her would have had no ground to work upon, and therefore it cannot be said that the dissatisfaction existing in the district was wholly without fault on her part.

On Friday, December 26th, 1862, the committee discharged her against her will. On the next afternoon the committee called at Pierce's, where the plaintiff boarded, and in her absence left with one of the family for her an order drawn by him on the district treasurer in her favor for $7.50 expressed to be for her services as teacher. On returning early in the evening the plaintiff found the order on the table in the sitting room and was told by one of the family that Mr. Peck had left it there for her. She thereupon went to her brother's, about a mile, carrying with her the order and all her effects, and with no intention of returning again to Pierce's, and she then intended to keep the order. On reaching her brother's she consulted with several friends, and the result was that she returned the order that same evening to Mr. Pierce's about 9 o'clock, having had it in her possession about three or four hours ; she laid it down on the table in the sitting room, saying to the members of Mr. Pierce's family there assembled that she should not take it, and that she left it where she found it, and it has remained in Mr. Pierce's possession ever since. Other facts are stated in the opinion of the court.

At the September Term, 1865, DEAN J., presiding, the court rendered judgment, *pro forma*, on the report for the plaintiffs to recover $34.95, the same being $30. for twelve weeks at $2.50 per week and interest thereon,—to which the defendants excepted.

*C. B. Eddy* for the defendants.

*H. E. Stoughton* for the plaintiffs.

The opinion of the court was delivered by

STEELE, J.  The contract between the teacher and the school district contained a stipulation "that she should leave if the school was not satisfactory." It was not by its terms determinable at the pleasure of the employer, and does not come within the principle of the decisions which have been made upon contracts of service in which there is an express agreement that either party may, at any time,

determine the relation if he likes. Nor does it come within the principle of the case in which an employer retains the right to dismiss his servant whenever he is dissatisfied with the arrangement. *Rossiter* v. *Cooper*, 23 Vt. 522 ; *Provost* v. *Harwood*, 29 Vt. 219. The right of determining the relation between the parties in this case is limited to the contingency that the *school* should not prove satisfactory, and to justify a dismissal of the teacher upon even this ground we think that the dissatisfaction must be real, and not mere whim, caprice, suspicion or prejudice. The most that the referee finds, to the disparagement of the teacher, in this case, is, that she was not faultless and was sufficiently imperfect to make it possible for unjust criticism and malevolence to injure her, and that her difficulties arose from prejudice thus created and to which nearly any person would be liable.

It does not seem necessary to decide in this case just what the effect or force of this stipulation in a contract of service is, because under no interpretation would it warrant the prudential committee in dismissing the teacher for any other reason than dissatisfaction *with her school;* and we are satisfied that the fair and reasonable interpretation of the whole report taken together is, that the teacher was not dismissed on account of dissatisfaction with her school or her teaching, but on account of dissatisfaction with *her.* The force of the finding of the referee, that " no dissatisfaction would have existed if she had been acceptable to the district apart from her qualifications as a teacher," is not materially qualified by his also finding that if she had been a person entirely without fault the slanders would not have been effectual.

There is no question upon the report of the existence of dissatisfaction, which arose from her change of her boarding place, nor of the existence of prejudice and unfavorable public opinion, which, the referee finds, were manufactured by the influential family, who were affronted, and this was extended to a belief in her incompetency ; but it not appearing that during the three weeks she was allowed to teach, she manifested incompetency, or that her school was examined, or her method of teaching investigated, and in the absence of any affirmative finding that the dissatisfaction was with *the school,* we are

led to the belief that the district were rather expecting that they were going to be dissatisfied with the school than dissatisfied already ; and that the reason of her dismissal was her personal unpopularity and the unreasonable clamor against her which was instigated by the resentment of the offended family who were affronted by acts quite distinct from her school or its management.

A contract with a teacher is like a contract with any other person. One who sets a tailor at work making him a suit of clothes and agrees to take them if satisfactory, could not refuse to accept them upon the ground of dislike of the *person;* or stop the work after it is begun on the ground of information or belief that he is incompetent. The dissatisfaction must be with the article, not the man.

II. After the teacher was dismissed the prudential committee came to her and requested a proposition of settlement to be used at a school meeting to be held soon after. The teacher offered to accept twenty dollars and the offer was communicated to the district in writing. The district then voted to settle with her "if it could be done for twenty dollars." They did not, however, make any effort to do so and never communicated to her any acceptation of her proposal. The vote was a mere expression of a purpose to accept it. A district like an individual may have an intention of accepting a proposal and may declare that intention to third persons or to themselves, and, as in this case, may never carry it out or communicate it to the other party and may abandon it. We do not think this offer now binds the teacher. When the prudential committee wrote the teacher to close her school the next evening, he promised to give her, at that time, an order for her pay.

The next evening she took an order for $7.50 upon the simple statement to her that it was left for her by Mr. Peck, and in the course of the same evening she returned it. It does not appear that she accepted it as payment even to the extent of $7.50, or that the committee himself so regarded it. He called it not pay but an order for her pay. Until she had availed herself of it in some way, the district had paid her nothing and parted with no value. It does not appear upon its face or otherwise to have been in full for her services nor to have been expressly offered or received as such.

We do not think she lost any of her rights by taking the paper which she returned.

The judgment of the county court, which is for the largest sum reported, is affirmed.