# CASES DETERMINED

## January Term, 1881.

---

### TRIPP vs. SCHOOL DISTRICT.

*December 2, 1880 — January 11, 1881.*

SCHOOL DISTRICTS: *Powers of board in contracting with teacher.*

A clause in a contract of hiring between a school-district board and the teacher of the district school, by which the board declares that "we reserve the right to close the school at any time if not satisfactory to *us*," *held*, to be unauthorized by law, and inoperative.

APPEAL from the County Court of *Winnebago* County. The case is thus stated by Mr. Justice TAYLOR:

"The plaintiff sues to recover her wages as a school teacher. She was hired by the district board of the defendant school district to teach the school of said district for the term of sixty-six days, for which the district agreed to pay the sum of $84; school to commence on the 23d of November, 1878. The contract was in writing, was signed by the three district officers and the teacher, and was as follows: 'It is hereby contracted and agreed by and between school district No. 3, town of Utica, county of Winnebago and state of Wisconsin, and *Josie Tripp*, a legally qualified teacher of the town of Omro, that the said *Josie Tripp* shall teach the school in said district for the term of sixty-six days, for the sum of eighty-four dollars, commencing on the 23d of November, 1878; and the said *Josie Tripp* agrees faithfully to teach the said school accord-

ing to the best of her ability, and to keep a register of daily attendance of each pupil belonging to the school, and make such report of the school as is or may be required by law, or by the county superintendent, or by the state superintendent of public instruction, and to observe and enforce all rules and regulations established by proper authority for the government and management of said school; and it is further agreed by and between the parties hereto, that the said *Josie Tripp* shall build, or cause to be built, the fires at her own expense, the same as would be expected of a male teacher; also use her best endeavors to preserve in good condition the school-house and premises connected with it, also the apparatus and furniture thereto belonging, and also all books and records provided by the school board for the use of said school, and to deliver the same to the clerk of the said district at the close of the said term of school in as good condition as when received, natural wear and tear excepted. *We reserve the right to close the school at any time if not satisfactory to us.* And the said school district hereby agrees to keep the school-house and premises connected with it in good repair; to procure necessary fuel for the use of said school during the said term; and for the services performed as above described the said district agrees to pay the said *Josie Tripp* the sum of $84 on or before the 10th day of March, 1879.' Under this contract the plaintiff commenced teaching, and taught the school until about the 13th day of January, 1879, when the school was closed by order of two of the members of the board, and plaintiff was not permitted to teach the balance of the term for which she was employed. She was willing and offered to continue the school until the end of the term. She also alleges and proves that she was unable to get other employment during such term.

"The plaintiff claims that she is entitled to recover the $84. The school district insists that she is only entitled to recover for the time she taught the school in fact, at the same rate she was to

receive for the sixty-six days. The contract signed was a printed form, presumably prepared by the county superintendent or the superintendent of public instruction. The form was, however, changed in this case by the interlineation of the following words before it was executed by the parties: '*We reserve the right to close the school at any time if not satisfactory to us.*' The defendant, in its answer, sets out the contract, and alleges '*that the district board discharged the plaintiff because they were dissatisfied with the school,*' and further alleges 'that the school was disorderly, and not properly controlled by the plaintiff.' The action was tried by the county court without a jury, and judgment was rendered in favor of the defendant."

Plaintiff appealed from the judgment.

For the appellant there was a brief by *Wheeler & Stewart,* and oral argument by *W. M. Stewart.*

*Moses Hooper,* for the respondent.

TAYLOR, J. The learned counsel for the appellant raised several questions upon the argument, relating to the sufficiency of the tender, made or claimed to have been made by the defendant, of the amount admitted to be due the plaintiff, and as to the meaning of the word " us " in the reservation above quoted. These questions we shall not consider, as we have concluded that the findings of fact by the learned county judge upon the main question as to the right of the district board to discharge the plaintiff, are not sufficient to entitle the defendant to a verdict in its favor, admitting that the tender was sufficient and that the word " us " means the district board. The following are the findings of fact and conclusions of law upon this question, as filed by the court below:

Findings of fact: "*Fifth.* During the continuance of such school, complaints were made to the members of the school board that plaintiff was not keeping good order in said school, and was not properly controlling the scholars therein, and was

not keeping school the full number of hours per day as required by law." "*Sixth.* After hearing said complaints, the clerk and director and treasurer of said school visited the same together, as a school board, for the purpose of ascertaining the condition and character of said school, and the manner in which the same was being controlled and governed." *Seventh.* "A majority of said board, to wit, the clerk and director, after such an examination, all members being present, were dissatisfied with said school on account of the want of order and discipline therein, and on account that the same was noisy and not well conducted." *Eighth.* "The proofs showed that such dissatisfaction was not unreasonable." *Ninth.* "There is no evidence that such action of said board was on account of any malice or wantonness or improper feelings of said board, or any other matter than their judgment relative to the usefulness of said school." *Tenth.* "There is considerable evidence that said school was not properly kept or controlled, and there is evidence contradictory thereto; but whether such school was so poorly kept or governed as to justify the closing thereof, under the statutory powers of said board, and irrespective of the special provisions of said contract, is not determined by this court as a matter of fact."

Conclusions of law: *First.* "The school board had the power, under the contract sued on, to terminate it, when, on investigation, they concluded that the school was not kept in a satisfactory manner — that it was unsatisfactory in respect to discipline and order maintained in the same." *Second.* "To justify the closing of said school, it was necessary that said board should be dissatisfied with the same in respect to some matter affecting its usefulness to the scholars, and that such dissatisfaction should be real and not pretended." *Third.* "To justify the closing of said school, it was not necessary that the defendant should show such a condition of things as would induce the judge of this court to close the school and terminate the contract, or as would induce a jury to do the same. It

was only necessary that the board should investigate the matter in good faith, and, on such investigation, be satisfied that there were such defects in the conduct of such school as substantially to impair its usefulness."

It may be admitted, for the purposes of this case, that, as between persons not acting in an official capacity, a reservation in a contract of hiring of the power to terminate the contract when either party should be dissatisfied with the other would be a valid reservation, and that under such contract either party, or the party in whose favor the reservation was made, would be at liberty to terminate it at any time he saw fit, and thereby relieve himself from any further obligation to the other thereunder. Such admission is not conclusive of the rights of the parties in the case at bar.

The school-district board, in making a contract with a teacher, act officially and on behalf of the district; their powers as a district board are limited by statute, and they can only exercise such as are expressly conferred by statute, or as are fairly implied from the nature of the duties and service required by law from them. The following sections of the statutes are the only ones which appear to have any direct bearing upon the question. Section 438, R. S. 1878, gives the district board the power to hire teachers, and is as follows: "The district board shall contract with and hire duly qualified teachers in the name of the district, and the contract made shall specify the wages per week, month or year to be paid, and, when completed, shall be filed in the office of the district clerk, with a copy of the certificate of the teacher so employed attached thereto, and a copy of such contract shall be furnished by the clerk to the teacher. No contract with any person not holding a diploma or certificate then authorizing him to teach shall be valid; and all such contracts shall terminate if the authority given to teach shall expire by limitation and shall not be renewed, or if it shall be revoked." Section 441 requires the district board to visit the school, etc.,

and is as follows: "The district board shall visit the school under their care, examine into the condition thereof and the progress of the pupils, advise and consult with the teacher in reference to the methods of instruction, management and government, and exercise such general supervision as is necessary to carry out the provisions of this chapter." Section 453 authorizes the county superintendent, upon complaint made against any teacher in his district affecting his moral character, learning or ability to teach, to investigate the complaint, and, if it be found true, authorizes him to annul his certificate.

It will be seen that the section of the statute which gives them the power to hire a teacher, does not confer upon them, in express terms, the power to discharge such teacher before the expiration of the term for which he may be hired. It may, perhaps, be fairly inferred that, under the visitorial powers conferred upon the board by section 441 above quoted, they would have the power to close the school and discharge the teacher if he was not in fact competent to teach or govern the school, or if for any other cause such teacher was not duly performing the contract on his part, without calling any meeting of the district to take action upon the subject. Such power, however, is very different from that claimed for the board in the case at bar. It will be seen, by the findings of the learned circuit judge, that he did not find that the appellant was not a competent teacher, or that she was not in all respects in the due performance of her contract as such teacher at the time she was discharged by the board; but he proceeded to render judgment in favor of the district because he says that under the contract the board had the right to discharge her if the school was not satisfactory to them, so long as it did not appear that they acted maliciously, or from personal feelings of hostility towards the teacher, and there was an existing state of facts which might justify them in being dissatisfied with the management of the school. The judgment clearly proceeds upon the ground that under the contract

the board could close the school and lawfully discharge the
teacher before her term of hiring expired, if they were dissat-
isfied with her management of the school; and if there was
any ground for such dissatisfaction, their judgment was final
and could not be reviewed in an action to recover her wages.
If this judgment can be sustained, it must be sustained upon
the ground that the school boards of the several school districts
of this state may, if they see fit, compel all teachers of dis-
trict schools to teach the same to the satisfaction of the re-
spective boards who hire them, instead of to the satisfaction
of the people who compose the district, or in a manner most
beneficial to the pupils in attendance, or as a good, competent
and faithful teacher ought to teach the same. Certainly no
such power is expressly conferred upon district school boards
by the statutes, and we do not think that the good order,
efficiency or usefulness of the common schools of the state
would be promoted by holding that such power was conferred
upon them by implication or by a liberal construction of the
statutes in their favor.

On the other hand, we think the good order and usefulness
of the schools would be greatly prejudiced by holding that the
boards had such power. If the power claimed for the board
in this case exists, and may be enforced, then the public schools
must be taught to suit the whims, caprices and peculiar no-
tions of the hiring board, and not as the teacher, in the con-
scientious discharge of his duty, should teach the same. The
judgment in this case shows that, under the exercise of such
power, a teacher who is not proved to have in any way vio-
lated his duty as a competent and faithful teacher, may be
lawfully discharged from his employment. Under the rules
of the common law the teacher would be subject to discharge
if he failed to perform his duty in any material point; and
under section 453, above quoted, if the county superintendent,
upon complaint, annulled his certificate, that fact would sub-
ject the incompetent teacher to immediate discharge. The

rules of the common law, and the statutory provision above
mentioned, afford, in our opinion, sufficient facilities for getting
rid of incompetent teachers, without giving the district-board
the arbitrary power to discharge when the majority are dis-
satisfied with the way in which the school is taught or gov-
erned.   The facts in this case fully illustrate the injustice
which may be committed under the exercise of this power.
The teacher was discharged because two of the board were
dissatisfied with the management of the school, while neither
the evidence nor the opinion of the court who tried the action
shows that the teacher was guilty of any breach of her duty as
a competent and faithful teacher, and while the other member
of the board, and the county superintendent, who had fully as
ample means of judging as to the conduct of the teacher and
management of the school as the two members of the board
who discharged her, were of the opinion that she was in all
respects performing her duty as a faithful teacher, and that
the school was as well conducted as other schools of a like
character.

The only case cited by the learned counsel for the respond-
ent, which is at all similar in its facts to the case at bar, is *Rich-
ardson v. School District*, 38 Vt., 602.   In that case the con-
tract with the teacher contained the following provision:
"That she should leave if the school was not satisfactory."
She was discharged, and, in an action to recover her wages not-
withstanding such discharge, the court deciding the case
undoubtedly entertained the opinion that the provision was
valid; but it was clearly held in that case that the dissatisfac-
tion with the school must be the dissatisfaction of the district,
and not of the prudential committee who signed the contract
of hiring.   There would be many reasons for holding that the
contract of hiring might be terminated when the majority of
the patrons of the school were dissatisfied with it, which would
have no force when applied to a power to determine the same
where but one or two of the persons interested in the school
were dissatisfied.   The school might be a very useful school

even though two men in the district were dissatisfied; but it could hardly be so where a majority of the persons having children in the school were dissatisfied with its management.   It will be seen, by an examination of the powers conferred upon the district in district meetings, that the district cannot make a contract with a teacher without the intervention of the district board.   The district meeting may vote the money for the support of the school, and, within certain limits, determine how long the school shall be taught in each year, and whether it shall be taught by a male or female teacher; but there the power of the district meeting stops.    Section 430, R. S. 1878. The statute then provides that the board shall hire the teacher. The board is made the sole agent of the district in hiring the teacher, but in such hiring the board acts for the district and in its name.   They have no power to hire a teacher on their own account, and the contract of hiring is, in all cases, made in the name of the district.   The contract being made with the district, in its name and for its benefit, it would seem that there can be no implication that the agent, who is simply authorized to hire for his principal, could reserve to himself the right to discharge the servant of the principal without the consent or approval of the principal.   We think the only power which the board have to discharge a teacher is the power which they may exercise on behalf of the district when the teacher is guilty of some breach of his contract, which, at common law, would justify an employer in discharging his servant, or when the teacher has lost all right to teach the school by reason of the annulment of his certificate in the way prescribed by the statute.   The statute may, we think, be fairly construed to give such power to the board without calling a meeting of the district to take action in the matter.

We are of the opinion that the reservation in the contract was unauthorized, and that it should be construed as though it had not been inserted therein.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded for a new trial.