CARVER *v.* SCHOOL DISTRICT NO. 6 OF BATTLE CREEK TOWNSHIP.

1. SCHOOLS — COMPETENCY OF TEACHER — BY WHOM DETERMINED.
   A district school board has no authority to discharge as incompetent a teacher employed by it under 2 How. Stat. § 5065; the determination of the question of competency being for the board of examiners, which issues the certificate of qualification, and which possesses the power, under 2 How. Stat. § 5155, to annul the same in case of mistake.

2. SAME—GRADE REGISTER—BREACH OF CONTRACT.
   A teacher who complies with the conditions of his contract with the local board in relation to the listing of pupils does not subject himself to lawful dismissal by failing to keep the "grade register" prescribed by the superintendent of public instruction.

3. SAME — WRONGFUL DISCHARGE — DAMAGES—BURDEN OF PROOF.
   A school district has the burden of showing, in an action by a teacher wrongfully discharged, that plaintiff might have obtained other employment in the same line, and thereby reduced his damages. *Smith* v. *School District*, 69 Mich. 589, *Farrell* v. *School District*, 98 Mich. 43, followed.

Error to Calhoun; Smith, J. Submitted June 17, 1897. Decided June 28, 1897.

*Assumpsit* by Gerald Carver against school district No. 6 of Battle Creek township, upon a teacher's contract. From a judgment for defendant, plaintiff brings error. Reversed.

*Frank W. Clapp*, for appellant.

*Leslie E. Clawson* (*Herbert E. Winsor*, of counsel), for appellee.

MONTGOMERY, J. The plaintiff, on the 11th of September, 1893, entered into a contract with defendant, reading as follows:

"It is hereby contracted and agreed between the district board of school district No. 6, in the township of Battle Creek, county of Calhoun, and State of Michigan, and Gerald Carver, a legally-qualified teacher, in said township, that the said Gerald Carver shall teach the school of said district for the term of nine months commencing on the 11th day of September, 1893; and the said Gerald Carver agrees faithfully to keep a correct list of the pupils, and the age of each, attending school, and the number of days each pupil is present, and to furnish the director of the district with a correct copy of the same at the close of school, and to observe and enforce the rules and regulations established by the district board.

"The said district board, in behalf of said district, agrees to keep the school-house in good repair; to provide the necessary fuel; to keep the school-house in comfortable condition; to pay said Gerald Carver for the said services as teacher, to be faithfully and truly rendered and performed, the sum of $250 per year, the same being the amount of wages above agreed upon, to be paid on or before the 20th day of June, 1894: *Provided*, that in case said Gerald Carver shall be dismissed from school by the district board for gross immorality or the violation of this contract, or shall permit his certificate of qualification to expire, or shall have said certificate annulled or suspended by the county board of school examiners or other lawful authority, he shall not be entitled to any compensation from and after such annulment, suspension, or dismissal."

Plaintiff at the time held a third-grade certificate, entitling him to teach in the schools of Calhoun county for one year from September 1, 1893. He began teaching on September 11th, and continued until March 9, 1894, at which time the usual spring vacation occurred. During the vacation the district board discharged him, and when he attempted to resume his labors he found the schoolhouse locked against him. Plaintiff spoke to the county commissioner, and asked him if he could find him a position. He obtained none, and remained at home on the farm, and, at the end of the term for which he was employed, brought this action to recover pay for the spring term. The case was tried before a jury at the circuit, and verdict returned in favor of defendant. Plaintiff brings error.

A large number of assignments of error are found in the record, but counsel has grouped them under a few heads, and really the questions involved depend upon a construction of the contract, and the rights of the respective parties thereunder, when read in the light of the school law. The learned circuit judge expressed himself in doubt as to the true interpretation of the statute, but, being required to decide the important questions involved without opportunity to investigate, gave an interpretation favorable to the contention of defendant. The claim made by defendant was that the plaintiff was incompetent; that he lacked in government, and was particularly deficient in his knowledge of grammar and language; that he mispronounced certain words; that he failed on some occasions to have the school-house sufficiently warmed; that he did not get to the school-house early enough in the morning; and that he failed to keep a correct list of the grades of his pupils.

Unquestionably, the failure of the plaintiff to observe the engagements of his contract would justify the school board in rescinding the contract. These engagements were: *First*, to teach the school for nine months; *second*, to keep a correct list of the pupils, and of their ages and

attendance; and, *third*, to observe and enforce the rules and regulations established by the district board. The contract provided, in effect, that the plaintiff might be dismissed by the district board for gross immorality or the violation of the contract, in which case his compensation should cease, as also in case his certificate expired, or was annulled by the county board of school examiners or other lawful authority. There was no charge of immorality brought against plaintiff, and no rules for the government of the school were adopted by the school board. The case was narrowed down to the questions of whether he kept correct lists, whether he broke his contract by failure to keep fires, and whether the board had the right to discharge him for incompetency. Indeed, the last question is of supreme importance, as the record indicates that the action of the board was taken on this ground. The circuit judge charged:

"The plaintiff must satisfy you by a fair preponderance of the evidence—that is, a fair weight of the evidence—that he was competent to teach this school, to govern and control it, and to impart his knowledge to the pupils, and that he has been reasonably faithful and diligent in the performance of his duties under the contract with the district. * * * I instruct you further that the fact that plaintiff held a certificate from the county board of school examiners, authorizing him to teach school, would not prevent the school district from legally discharging him, if you believe from the evidence in the case he was incompetent, or unfit to have the management of this school. And I instruct you that the district had the legal right to discharge the plaintiff for incompetency or neglect of duty, even though the county board may not have seen fit to annul his certificate."

We think these instructions erroneous. Section 5065, 2 How. Stat., provides ·

"The district board shall hire and contract with such duly-qualified teachers· as may be required; and all contracts shall be in writing, and signed by a majority of the board on behalf of the district. Said contract shall specify the wages agreed upon, and shall require the teacher to

keep a correct list of the pupils, and the age of each, attending the school, and the number of days each pupil is present, and to furnish the director with a correct copy of the same at the close of the school. Said contract shall be filed with the director, and a duplicate copy of the contract shall be furnished to the teacher. No contract with any person not holding a legal certificate of qualification then authorizing such person to teach shall be valid, and all such contracts shall terminate. if the certificate shall expire by limitation and shall not immediately be renewed, or if it shall be suspended or revoked by proper legal authority."

Section 5155 provides that—

"The board of school examiners may suspend or revoke any teacher's certificate for any reason which would have justified said board in withholding the same when given, for neglect of duty, for incompetency to instruct or govern a school, or for immorality; and said board may, within its jurisdiction, suspend, for immorality or incompetency to instruct and govern a school, the effect of any teacher's certificate that may have been granted by other lawful authority."

This contract was made with express reference to these provisions, and the law carefully guards the rights of the patrons of the school, providing for a preliminary examination, and for the annulment of the certificate in case the board of examiners has made a mistake. If anything demonstrating the impropriety of submitting the question of the competency of a teacher to a jury for determination is required, it is furnished in this case. It appears that the board of examiners had a meeting to consider the propriety of annulling the certificate of plaintiff, and declined to do so. And yet pupils were called to give evidence to show that the plaintiff mispronounced certain words, such as telegraphy, Cuba, America, and others. Who is to furnish the standard for pronunciation? Just how broad must the "a" be sounded in pronouncing Cuba or America? Should these questions be left to the jury to determine?

The authorities on this question are not numerous, and

the cases which have arisen are generally based upon the provisions of the statutes in force in the different States. The case of *Arnold* v. *School District*, 78 Mo. 226, goes to the extreme length of holding that the school board has not, under the statutes in force in that State, power to discharge a teacher for cruel treatment and profane and abusive language used towards pupils.   We would not be prepared to follow this case.   A better rule is stated in *Tripp* v. *School District*, 50 Wis. 651, in which case it was said:

"We think the only power which the board have to discharge a teacher is the power which they may exercise on behalf of the district when the teacher is guilty of some breach of his contract which, at common law, would justify an employer in discharging his servant, or when the teacher has lost all right to teach the school by reason of the annulment of his certificate in the way prescribed by the statute."

See, also, opinion of Maxwell, J., in *Bays* v. *State*, 6 Neb. 175.   There is no difficulty in saying that a teacher is bound to treat his pupils in a humane manner, and that when he fails to do so he is guilty of a breach of his contract.   But he contracts, so far as competency is concerned, to use the qualifications which it has been determined that he has, and none other.

Plaintiff also contends that there was error in permitting it to be shown that he failed to build fires and to keep the school-house comfortable.   We think the parties themselves placed a construction upon the contract which imposed this duty upon plaintiff, and that he assumed that duty; that there was, therefore, no error committed in that regard.

Complaint was also made that the plaintiff did not keep a proper grade register.   No such register was stipulated for in the contract.   The evidence shows that the pupils were graded, but the grade of each was noted on a list alphabetically arranged.   The defendant offered testimony to show a rule or regulation of the superintendent

113 MICH.—34.

of public instruction requiring a grade register; but our attention is not called to any provision of law empowering the superintendent or school examiners to enlarge or modify the contract between the school board and the teacher. If the plaintiff kept such a list as the contract called for, the defendant was not authorized to demand anything more; certainly not until the close of his service. *School Directors* v. *Reddick*, 77 Ill. 628.

The other questions do not require discussion. As to the duty of plaintiff to seek other employment, and the burden of showing whether it could have been obtained, the cases of *Smith* v. *School District*, 69 Mich. 589, and *Farrell* v. *School District*, 98 Mich. 43, sufficiently cover the ground.

Judgment reversed, and new trial ordered.

The other Justices concurred.